# UNITED STATES DISTRICT COURT

for the
## Western District of Kentucky
## Louisville Division

| | | |
|---|---|---|
| Christopher Jankowski | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No.   3:18-cv-397-RGJ |
| | ) | |
| Capital One Bank (USA), N.A. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Capital One Bank (USA), N.A. | ) | |
|     4851 Cox Road | ) | |
|     Glen Allen, VA 23060 | ) | |
| | ) | |
| Diversified Consultants, Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Incorp Services, Inc. | ) | |
|     828 Lane Allen Road, Suite 219 | ) | |
|     Lexington, KY 40504 | ) | |
| | ) | |
| Revenue Management Group, Incorporated | ) | |
| d/b/a Keybridge Medical Revenue Care | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     KBHR Statutory Agent Corp. | ) | |
|     P.O. Box 361715 | ) | |
|     Columbus, OH 43236 | ) | |
| | ) | |
| Security Credit Services, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     William Alias, Jr. | ) | |
|     2653 West Oxford Loop, Suite 108 | ) | |
|     Oxford, MS 38655 | ) | |
| | ) | |
| TEK-Collect Incorporated | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     50 West Broad Street, Suite 1330 | ) | |
|     Columbus, OH 43215 | ) | |
| | ) | |
| | ) | |

Verizon Long Distance, LLC                       )
     *Defendant*                             )
Serve:                                           )
     CT Corporation System                       )
     306 West Main Street, Suite 512             )
     Frankfort, KY 40601                         )
                                                 )
Equifax Information Services, LLC                )
     *Defendant*                             )
Serve:                                           )
     Corporation Service Company                 )
     421 West Main Street                        )
     Frankfort, KY 40601                         )
                                                 )
Experian Information Solutions, Inc.             )
     *Defendant*                             )
Serve:                                           )
     CT Corporation System                       )
     306 West Main Street, Suite 512             )
     Frankfort, KY 40601                         )
                                                 )
Factual Data Corp.                               )
     *Defendant*                             )
Serve:                                           )
     CT Corporation System                       )
     306 West Main Street, Suite 512             )
     Frankfort, KY 40601                         )
_____          )

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.    This is a complaint for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

### JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331; the FDCPA, 15 U.S.C. §1692k(d); and the FCRA 15 U.S.C. §§ 1681n and 1681o. Venue is proper, because the nucleus of relevant facts and events that affected and damaged Plaintiff occurred within Jefferson County, Ky. which is located within this District.

### PARTIES

3.    Plaintiff Christopher Jankowski is a natural person who resides in Jefferson County,

Ky.  Mr. Jankowski is a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c).

4.     Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank regulated by the Office of the Comptroller of the Currency whose headquarters is located at 4851 Cox Road, Glen Allen, VA 23060 and is a furnisher of information and user of consumer credit reports within meaning of the FCRA.

6.     Defendant Diversified Consultants, Inc. ("Diversified") is a Florida corporation, with its principal place of business located at 10550 Deerwood Park Boulevard, Suite 309, Jacksonville, FL 32256. Diversified has registered with the Kentucky Secretary of State and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

7.     Diversified is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) inasmuch as it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentality of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts. Diversified is also a "furnisher of information" within the meaning of the FCRA.

8.     Defendant Revenue Management Group, Incorporated, doing business as Keybridge Medical Revenue Care ("Keybridge"), is an Ohio for-profit corporation, with its principal place of business located at 2348 Baton Rouge Avenue, Lima, OH 45805. Keybridge has not registered with the Kentucky Secretary of State and is engaged in the business of directly or indirectly collecting debts from Kentucky citizens and consumers on the behalf of creditors.

9.     Keybridge is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) inasmuch as it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentality of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts. Keybridge is also a "furnisher of information" within the meaning of the FCRA.

10.     Defendant Security Credit Services, LLC ("SCS") is a Mississippi for-profit corporation, with its principal place of business located in Oxford, MS. Security has not registered with the Kentucky Secretary of State and is engaged in the business of directly or indirectly collecting debts from Kentucky citizens and consumers on the behalf of creditors.

11.     SCS is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) inasmuch as it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentality of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts. SCS is also a "furnisher of information" within the

meaning of the FCRA.

12. Defendant TEK-Collect Incorporated ("TEK") is an Ohio for-profit corporation, with its principal place of business located in Columbus, OH. TEK has not registered with the Kentucky Secretary of State and is engaged in the business of directly or indirectly collecting debts from *inter alia* Kentucky citizens and consumers on the behalf of creditors.

13. TEK is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) inasmuch as it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentality of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts. TEK is also a "furnisher of information" within the meaning of the FCRA.

14. Defendant Verizon Long Distance, LLC ("Verizon") is a provider of interstate international telecommunications services to homes and businesses and a Delaware corporation which has registered with the Kentucky Secretary of State, with its principal place of business located at One Verizon Way, P.O. Box 627, Basking Ridge, NJ 07920-1097 and is a furnisher of information and a user of consumer credit reports within the meaning of the FCRA.

16. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax has registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

17. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626. Experian has registered to do business with the Kentucky Secretary of State. Experian is a "consumer reporting agency" within the meaning of the FCRA.

18. Defendant Factual Data Corp. ("Factual Data") is a foreign corporation with its principal place of business located at 5200 Hahns Peak Drive, Loveland, CO 80538. Factual Data has registered to do business with the Kentucky Secretary of State. Factual Data is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

19. Plaintiff Jankowski is keenly aware of the importance of his credit score in obtaining credit, being credit worthy, and that every error on his credit report negatively impacts his credit score and his ability to obtain credit.

20. As explained on Bankrate.com, a person's credit score is important to many major

life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

21.    Plaintiff Jankowski regularly reviews his credit reports to monitor and improve his credit score because he would very much would like to qualify for a home loan and other credit.

22.    On or about September 5, 2017, Mr. Jankowski attempted to get pre-approved for a home loan with Peoples Home Equity.

23.    In connection with the pre-approval process, Peoples Home Equity requested and reviewed a tri-merged credit report published by Accurate Financial Services, Inc. on September 5, 2017.

---

[1.]    http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

24.     Peoples Home Equity could not pre-approve Mr. Jankowski for a home loan based on the information in his Accurate Financial Services credit report.

25.     Mr. Jankowski's Accurate Financial Services credit report contained several tradelines that were incorrect, inaccurate, and false including tradelines furnished by the Defendants in this action.

26.     Mr. Jankowski disputed the false and inaccurate credit report tradeline information on his tri-merged credit report which included the false and inaccurate credit report information furnished by the Defendants.

27.     The credit report tradeline information of Defendants disputed by Plaintiff Jankowski resulted in some of the disputed false and inaccurate credit information remaining uncorrected or validated as correct.

I.     **Facts Relating to Diversified Consultants, Inc. and TEK-Collect Incorporated**

28.     Upon review of his September 5th tri-merged credit report, Mr. Jankowski discovered tradelines furnished by Defendants Diversified Consultants, Inc. ("Diversified") and TEK-Collect Incorporated ("TEK-Collect").

29.     The Diversified tradeline was in connection with a debt originated by ATT U Verse.

30.     The ATT U Verse debt was incurred for personal, family, or household purposes, which makes the ATT U Verse debt a "debt" within the meaning of the FDCPA.

31.     The TEK-Collect tradeline was in connection with a debt originated by the Pittsburgh Institute.

32.     The Pittsburgh Institute debt was incurred for personal, family, or household purposes, which makes the Pittsburgh Institute debt a "debt" within the meaning of the FDCPA.

33.     Diversified and TEK-Collect furnished negative credit information to one or more consumer reporting agency for purposes of collecting a debt from Mr. Jankowski. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) (holding that "reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms'").

34.     Mr. Jankowski did not recognize either the ATT U Verse debt or the Pittsburgh Institute debt and believed that both the ATT U Verse and the Pittsburgh Institute debts were the

product of identity theft or some type of fraud.

35.     Mr. Jankowski disputed the Diversified and TEK-Collect tradelines with the three major consumer reporting agencies ("CRA's"): Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union").

36.     Upon investigation of his disputes the Diversified and TEK-Collect tradelines were removed from all three of his credit reports.

37.     Diversified and TEK-Collect each violated the FDCPA by attempting to collect a debt from Mr. Jankowski that he does not owe and by publishing false credit information about Mr. Jankowski.

II.     **Facts Relating to Revenue Management Group, Incorporated d/b/a Keybridge Medical Revenue Care, Equifax Information Services, LLC, Experian Information Solutions, Inc., and Factual Data Corp.**

38.     Mr. Jankowski filed for Chapter 7 Bankruptcy relief on October 20, 2015 in the U.S. Bankruptcy Court for the Western District of Pennsylvania under case number 15-23991-JAD (the "Jankowski Bankruptcy").

39.     The Bankruptcy Court entered a discharge in the Jankowski Bankruptcy on February 12, 2016 (the "Jankowski Discharge").

40.     Mr. Jankowski's September 5th tri-merged credit report included a tradeline furnished by Defendant Revenue Management Group, Incorporated doing business as Keybridge Medical Revenue Care ("Keybridge") in connection with an unspecified medical debt.

41.     The medical debt that was the subject of the Keybridge tradeline was incurred for personal, family, or household purposes, which makes the Keybridge medical debt a "debt" within the meaning of the FDCPA.

42.     The Keybridge tradeline noted that the account was opened for collection in July 2015, which was three months *before* Mr. Jankowski filed his Chapter 7 Bankruptcy petition.

43.     The Keybridge tradeline on Mr. Jankowski's September 5. 2017 tri-merged credit report had a balance of $0.00 and that the debt had been discharged in his Chapter 7 Bankruptcy.

44.     After successfully disputing and removing some of the false and inaccurate credit report tradeline information Mr. Jankowski again tried to get preapproved for a home loan by

making application with Prime Lending in Louisville, KY.

45.     In connection with the pre-approval process, Prime Lending requested and reviewed a tri-merged credit report published by Defendant Factual Data Corp. ("Factual Data") on May 12, 2018.

46.     Factual Data furnished and reported information concerning Jankowski to Equifax, Experian, and Trans Union on his tri-merged credit report.

47.     Prime Lending could not pre-approve Mr. Jankowski for a home loan based on the tradeline information furnished by Factual Data on his tri-merged credit report because it included information concerning a Chapter 7 Bankruptcy case filed by Mr. Jankowski, including filing date and discharge date.

48.     Upon review of his Factual Data tri-merged credit report, Mr. Jankowski discovered that the Keybridge tradeline had changed.

49.     Keybridge furnished negative credit information concerning the medical debt at issue to one or more consumer reporting agency for purposes of collecting a debt from Mr. Jankowski. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) (holding that "reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms'").

50.     The Keybridge tradeline on his Factual Data tri-merged credit report no longer had a $0.00 balance or reflected that the medical debt was discharged in the Jankowski Bankruptcy.

51.     The Keybridge tradeline on Mr. Jankowski's Factual Data tri-merged credit report now showed that it was active collection account with a balance due and owing of $45.

52.     The Keybridge tradeline on Mr. Jankowski's Factual Data tri-merged credit report still showed a collection-account opening date of July 2015 and showed a last reporting update of April 2015.

53.     The Keybridge tradeline on Mr. Jankowski's Factual Data tri-merged credit report noted that the information in the Keybridge tradeline was supplied by Defendants Equifax and Experian.

54.     The Keybridge tradeline on Mr. Jankowski's Factual Data tri-merged credit report was false and inaccurate. This false and inaccurate credit information lowered Mr. Jankowski's score and caused or substantially contributed to the denial of Mr. Jankowski's request to be preapproved for a home loan.

55.     The CRA's have a duty to update credit reports to delete or correct tradelines discharged in a Chapter 7 Bankruptcy. *See White v. Experian Information Solutions, Inc., et al.*, Approval Order regarding Settlement Agreement and Release, 8:05-cv-01070 (C.D. Calif. entered Aug. 19, 2008) (establishing reasonable procedures for reporting of tradelines discharged in bankruptcy to assure maximum possible accuracy of consumer credit reports).

56.     Keybridge violated the FDCPA by attempting to collect a debt discharged in Mr. Jankowski's bankruptcy, misrepresenting the status of the medical debt at issue, and furnishing false credit information about Mr. Jankowski and the medical debt at issue.

57.     Equifax, Experian, and Factual Data each violated the FCRA by failing to maintain reasonable procedures to suppress or correct the Keybridge tradeline to show a $0.00 balance and that the underlying medical debt had been discharged in Mr. Jankowski's Chapter 7 Bankruptcy case.

58.     As a result of Keybridge's violations of the FDCPA, Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, and suffered frustration, anxiety, and emotional upset.

59.     As a result of Equifax's, Experian's, and Factual Data's violations of the FCRA, Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, and suffered frustration, anxiety, and emotional upset.

## III.     Facts Relating to Capital One Bank (USA), N.A.

60.     Upon review of his September 5, 2017 tri-merged credit report, Mr. Jankowski discovered tradelines furnished by Defendant Capital One Bank (USA), N.A. ("Capital One").

61.     Capital One was furnishing credit information about two charged-off accounts as follows:

> Capital One Bank (USA), N.A.
> P.O. Box 26030
> Richmond, VA 23260
> High Balance:          $2,368
> Payment Status:      Collection/Charge-Off
> Acct.#                    517805772758
>
> Capital One Bank (USA), N.A.
> P.O. Box 26030
> Richmond, VA 23260

| High Balance: | $337 |
| Payment Status: | Collection/Charge-Off |
| Acct.# | 517805790984 |

62.     The above Capital One tradelines were for credit card accounts that were not Mr. Jankowski's. Mr. Jankowski believed that the debts at the basis of the Capital One tradelines, if they exist, were created as the result of identity theft or fraud.

63.     In October 2017, Mr. Jankowski sent dispute letters to Equifax, Experian, and Trans Union disputing the Capital One tradelines.

64.     The dispute letters to Equifax, Experian, and Trans Union failed to correct the errors on his credit reports concerning Capital One.

65.     In January 2018, Mr. Jankowski sent another round of dispute letters to Equifax, Experian, and Trans Union disputing the Capital One tradelines.

66.     Receipt of Mr. Jankowski's dispute letters triggered Equifax, Experian, and Trans Union duty under 15 U.S.C. § 1681i(a)(2) to send Capital One notice of Mr. Jankowski's dispute within five business days of receipt of Mr. Jankowski's dispute.

67.     Mr. Jankowski's May 12, 2018 Factual Data credit report still contained the false and inaccurate Capital One tradelines.

68.     Capital One failed to conduct a reasonable investigation into Mr. Jankowski's disputes concerning the negative credit information concerning Mr. Jankowski and the credit information that Capital One was furnishing to the CRA's.

69.     Capital One falsely verified the accuracy of the disputed negative credit information to the CRA's.

70.     As a result of Capital One's failure to conduct a reasonable investigation of Mr. Jankowski's disputes, Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, and suffered frustration, anxiety, and emotional upset.


**IV.     Facts Relating to Security Credit Services, LLC**

71.     Upon review of his September 5, 2017 tri-merged credit report, Mr. Jankowski discovered tradelines furnished by Defendant Security Credit Services, LLC ("SCS").

72.     SCS was furnishing credit information about a charged-off account as follows:

    Security Credit
    2654 W. Oxford Loop
    #108
    Oxford, MS 38655
    High Balance:          $538
    Payment Status:        Collection
    Acct.#                 2849360

73.     The above SCS tradeline was for a debt that Mr. Jankowski did not recognize and for which he believes the debt at the basis of the SCS tradeline, if it does exist, is the result of identity theft or fraud.

74.     In October 2017, Mr. Jankowski sent dispute letters to Equifax, Experian, and Trans Union disputing the SCS tradeline.

75.     The dispute letters failed to correct the errors on his credit reports concerning SCS.

76.     In January 2018, Mr. Jankowski sent another round of dispute letters to Equifax, Experian, and Trans Union disputing the SCS tradeline.

77.     Receipt of Mr. Jankowski's dispute letters triggered Equifax, Experian, and Trans Union duty under 15 U.S.C. § 1681i(a)(2) to send SCS notice of Mr. Jankowski's dispute within five business days of receipt of Mr. Jankowski's dispute.

78.     Mr. Jankowski's May 12, 2018 Factual Data credit report still contained the false and inaccurate SCS tradeline.

79.     SCS failed to conduct a reasonable investigation into Mr. Jankowski's disputes concerning the negative credit information concerning Mr. Jankowski and the credit information that SCS was furnishing to the CRA's.

80.     SCS falsely verified the accuracy of the disputed negative credit information to the CRA's.

81.     SCS violated the FDCPA by misrepresenting the status of the alleged debt at issue and furnishing false credit information about Mr. Jankowski and the alleged debt at issue.

82.     SCS violated the FCRA by failing to conduct a reasonable investigation of Mr. Jankowski's disputes, filed with the CRA's, of the alleged debt at issue.

-11-

83.     As a result of SCS's violations of the FDCPA, Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, frustration, anxiety, and emotional upset.

84.     As a result of SCS's violations of the FCRA, Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, frustration, anxiety, and emotional upset.


## V.     Facts Relating to Verizon Long Distance, LLC

85.     Upon review of his September 5, 2017 tri-merged credit report, Mr. Jankowski discovered a tradeline furnished by "Verizon/GTE."

86.     Upon information and belief, Defendant Verizon Long Distance, LLC ("Verizon") furnished the "Verizon/GTE" tradeline to the CRA's.

87.     Verizon was furnishing credit information about a charged-off account as follows:

> Verizon/GTE
> 25 Perimeter Center Parkway
> Atlanta, GA 30346
> High Balance:       $2,225
> Payment Status:     Collection

88.     The above Verizon tradeline was for debt that Mr. Jankowski did not recognize or recall. Mr. Jankowski believed that the debt that forms the basis of the Verizon tradeline, if it exists, is the result of identity theft or fraud.

89.     In October 2017, Mr. Jankowski sent dispute letters to Equifax, Experian, and Trans Union disputing the Verizon tradeline.

90.     The dispute letters failed to correct the errors on his credit reports concerning Verizon.

91.     In January 2018, Mr. Jankowski sent another round of dispute letters to Equifax, Experian, and Trans Union disputing the Verizon tradeline.

92.     Receipt of Mr. Jankowski's dispute letters triggered Equifax, Experian, and Trans Union duty under 15 U.S.C. § 1681i(a)(2) to send Verizon notice of Mr. Jankowski's dispute within five business days of receipt of Mr. Jankowski's dispute.

93.     Mr. Jankowski's May 12, 2018 Factual Data credit report still contained the false and inaccurate Verizon tradeline.

94.     Verizon failed to conduct a reasonable investigation into Mr. Jankowski's disputes concerning the negative credit information concerning Mr. Jankowski and the credit information that Verizon was furnishing to the CRA's.

95.     Verizon falsely verified the accuracy of the disputed negative credit information to the CRA's.

96.     As a result of Verizon's failure to conduct a reasonable investigation of Mr. Jankowski's disputes Mr. Jankowski suffered a reduction in credit score, denial of credit and loan preapproval, and suffered frustration, anxiety, and emotional upset.


## CLAIMS FOR RELIEF

### I.     Claims against Diversified Consultants, Inc.

97.     The foregoing acts and omissions of Defendant Diversified Consultants, Inc. ("Diversified") constitute violations of the FDCPA which violations include, but are not limited to, violation of 15 U.S.C. §§ 1692e and 1692f and one or more subsections of each section by attempting to collect a debt from Mr. Jankowski he does not owe, misrepresenting the status of the ATT U Verse debt, and by furnishing false credit information concerning Mr. Jankowski and the ATT U Verse debt.


### II.     Clams against TEK-Collect Incorporated

98.     The foregoing acts and omissions of Defendant TEK-Collect Incorporated ("TEK-Collect") constitute violations of the FDCPA which violations include, but are not limited to, violation of 15 U.S.C. §§ 1692e and 1692f and one or more subsections of each section by attempting to collect a debt from Mr. Jankowski which he does not owe, misrepresenting the status of the Pittsburgh Institute debt, and furnishing false credit information concerning Mr. Jankowski and the Pittsburgh Institute debt.


### III.     Claims against Revenue Management Group Incorporated d/b/a Keybridge Medical Revenue Care

99.     The foregoing acts and omissions of Defendant Revenue Management Group Incorporated d/b/a Keybridge Medical Revenue Care ("Keybridge") constitute violations of the FDCPA. Keybridge's violations include, but are not limited to, violation of 15 U.S.C. §§ 1692e and 1692f and one or more subsections of each section by attempting to collect a debt from Mr. Jankowski that was discharged in his bankruptcy case, misrepresenting the status and amount owed

on the medical debt at issue, and furnishing false credit information concerning Mr. Jankowski and the alleged medical debt.

## IV.    Claims against Capital One Bank (USA), N.A.

100.    The foregoing stated acts and omissions of Defendant Capital One Bank (USA), N.A. ("Capital One") violate the FCRA in that, after being informed by the CRA's that Mr. Jankowski disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Jankowski and the two charged-off credit card accounts, Capital One willfully failed to conduct a proper investigation of Mr. Jankowski's dispute, filed with the CRA's, that Capital One was furnishing false negative credit information about Mr. Jankowski and the two charged-off credit card accounts.

101.    Capital One willfully failed to review all relevant information purportedly provided by the CRA's to Capital One in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

102.    Capital One willfully failed to direct the CRA's to delete inaccurate information about Mr. Jankowski pertaining to the two charged-off credit card accounts as required by 15 U.S.C. § 1681s-2(b)(C).

103.    Mr. Jankowski has a private right of action to assert claims against Capital One arising under 15 U.S.C. § 1681s-2(b).

104.    Capital One is liable to Mr. Jankowski for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, punitive damages in an amount to be determined by the trier of fact, his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

105.    In the alternative, Capital One is liable to Mr. Jankowski for the actual damages he has sustained as result of its negligent violations of the FCRA in an amount to be determined by the trier of fact, his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

## V.    Claims against Security Credit Services, LLC

### A.    Violations of the FDCPA

112.    The foregoing acts and omissions of Defendant Security Credit Services, LLC

("SCS") constitute violations of the FDCPA. SCS's violations include, but are not limited to, violation of 15 U.S.C. §§ 1692e and 1692f and one or more subsections of each section by attempting to collect a debt from Mr. Jankowski he does not owe, misrepresenting the status of the alleged debt, and furnishing false credit information concerning Mr. Jankowski and the alleged debt.

### B.    Violations of the FCRA

113.    The foregoing acts and omissions of Defendant Security Credit Services, LLC ("SCS") violate the FCRA in that, after being informed by the CRA's that Mr. Jankowski disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Jankowski and the alleged account at the basis of the SCS tradeline, SCS willfully failed to conduct a proper investigation of Mr. Jankowski's dispute, filed with the CRA's, that SCS was furnishing false negative credit information about Mr. Jankowski and the SCS tradeline.

114.    SCS willfully failed to review all relevant information purportedly provided by the CRA's to SCS in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

115.    SCS willfully failed to direct the CRA's to delete inaccurate information about Mr. Jankowski pertaining to the alleged account at the basis of the SCS tradeline as required by 15 U.S.C. § 1681s-2(b)(C).

116.    Mr. Jankowski has a private right of action to assert claims against SCS arising under 15 U.S.C. § 1681s-2(b).

117.    SCS is liable to Mr. Jankowski for the actual damages he has sustained by reason of its willful violations of the FCRA in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, an award of punitive damages in an amount to be determined by the trier of fact, and his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

118.    In the alternative, SCS is liable to Mr. Jankowski for the actual damages he has sustained as result of its negligent violations of the FCRA in an amount to be determined by the trier of fact, and his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

### VI.    Claims against Verizon Long Distance, LLC

119.    The foregoing acts and omissions of Defendant Verizon Long Distance, LLC ("Verizon") violate the FCRA in that, after being informed by the CRA's that Mr. Jankowski disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Jankowski

and the alleged Verizon account, Verizon willfully failed to conduct a proper investigation of Mr. Jankowski's disputes he lodged with the CRA's that Verizon was furnishing false negative credit information about Mr. Jankowski and the alleged Verizon account.

120.    Verizon willfully failed to review all relevant information purportedly provided by the CRA's to Verizon in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

121.    Verizon willfully failed to direct the CRA's to delete inaccurate information about Mr. Jankowski pertaining to the alleged Verizon account as required by 15 U.S.C. § 1681s-2(b)(C).

122.    Mr. Jankowski has a private right of action to assert claims against Verizon arising under 15 U.S.C. § 1681s-2(b).

123.    Verizon is liable to Mr. Jankowski for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, an award of punitive damages in an amount to be determined by the trier of fact, and his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

124.    In the alternative, Verizon is liable to Mr. Jankowski for the actual damages he has sustained as result of its negligent violations of the FCRA in an amount to be determined by the trier of fact, and his reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

## VII.    Claims Against Equifax Information Services, LLC

125.    Defendant Equifax Information Services, LLC ("Equifax") violated the FCRA, 15 U.S.C. § 1681e(b), by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Jankowski and the discharged Keybridge tradeline.

126.    Equifax's conduct, actions and inactions were willful since Equifax was on clear notice that the failure to update that consumers' debts have been discharged in bankruptcy was improper due to similar lawsuits raising the same or similar claims as this action having been filed against Equifax in this and other jurisdictions rendering Equifax liable under 15 U.S.C. § 1681n for Mr. Jankowski's actual damages, statutory damages, and punitive damages, attorney's fees and costs.

127.    In the alternative, Equifax's conduct, actions and inactions were grossly negligent or negligent, rendering Equifax liable under 15 U.S.C. § 1681o for Mr. Jankowski's actual

damages, attorney's fees and costs.

## VII. Claims against Experian Information Solutions, Inc.

128.    Defendant Experian Information Solutions, Inc. ("Experian") violated the FCRA, 15 U.S.C. § 1681e(b), by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Jankowski and the discharged Keybridge tradeline.

129.    Experian's conduct, actions and inactions were willful since Experian was on clear notice that the failure to timely and properly update that consumers debts have been discharged in bankruptcy was improper due to similar lawsuits raising the same or similar claims as this action having been filed against Experian in this and other jurisdictions, therefore rendering Experian liable under 15 U.S.C. § 1681n for Mr. Jankowski's actual damages, statutory damages, punitive damages, attorney's fees and costs.

130.    In the alternative, Experian's conduct, actions and inactions were grossly negligent or negligent rendering Experian liable under 15 U.S.C. § 1681o for Mr. Jankowski's actual damages, attorney's fees and costs.

## VIII. Claims against Factual Data Corp.

131.    Defendant Factual Data Corp. ("Factual Data") violated the FCRA, 15 U.S.C. § 1681e(b), by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Jankowski and the discharged Keybridge tradeline.

132.    Factual Data's conduct, actions and inactions were willful since Factual Data was on clear notice that the failure to update that consumers' debts have been discharged in bankruptcy was improper due to similar lawsuits raising the same or similar claims as this action having been filed against Factual Data in this and other jurisdictions rendering Factual Data liable under 15 U.S.C. § 1681n for Mr. Jankowski's actual damages, statutory damages, and punitive damages, attorney's fees and costs.

133.    In the alternative, Factual Data's conduct, actions and inactions were grossly negligent or negligent, rendering Factual Data liable under 15 U.S.C. § 1681o for Mr. Jankowski's actual damages, attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christopher Jankowski requests that the Court grant him the following relief:

1.      Award Plaintiff the maximum amount of statutory damages against each Defendant under the FCRA, 15 U.S.C. §1681n, and/or the FDCPA, 15 U.S.C. § 1692k;

2.      Award Plaintiff his actual damages against each Defendant under the FDCPA, 15 U.S.C. § 1692k, and/or the FCRA, 15 U.S.C. §1681n or, in the alternative, under 15 U.S.C. § 1681o;

3      Award Plaintiff punitive damages against Defendants Capital One, SCS, Verizon, Equifax, Experian, and Factual Data under the FCRA pursuant to 15 U.S.C. § 1681n;

5.      Award Plaintiff his attorney's fees, litigation expenses and costs;

6.      A trial by jury; and

7.      Any other relief to which Plaintiff may be entitled.

Submitted by:

/s/ James R. McKenzie
**James R. McKenzie**
**J. Hays Lawson**
*Credit Defense Attorneys, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:    (502) 257-7309
jmckenzie@Jmckenzielaw.com
hays@creditdefenseky.com